

**RE: Alliant-Columbia Petition**

**Susan Castellanos**   to: Dunn, Steven D - DNR                          11/10/2009 02:41 PM
Cc:   Danny Marcus, Pamela Blakley
Bcc: Jane Woolums

| From: | Susan Castellanos/R5/USEPA/US |
|---|---|
| To: | "Dunn, Steven D - DNR" <Steven.Dunn@Wisconsin.gov> |
| Cc: | Danny Marcus/R5/USEPA/US@EPA, Pamela Blakley/R5/USEPA/US@EPA |
| Bcc: | Jane Woolums/R5/USEPA/US@EPA |

Steve -

We are all available Thurs morning.  Pam would like to tie in HQ to the discussion we have on the petition Order to try to help resolve your questions.  HQ has a window of availability on Thurs the 19th from 9:30 to 10:00 am.  Hopefully that works for you and Andy (to call in).  Perhaps we can meet at 9:00 am for a pre-meeting with you...  Danny actually gets in at 8:30 am so any time you want to come in is fine, and we don't have anything else scheduled Thursday so we can meet with you as long as you'd like.

HQ would like to know what we want to discuss.  I told them briefly that we need to get clarification on the actual-to-projected-actual test and what restrictions can be considered when calculating projections.  If you have specific questions, please send them to us by COB this week so that we can elevate to HQ before next Thurs.

Regarding the record sent to HQ for this petition, it included everything Sierra Club cited to in its petition, that is, the past permits, past exemption letters, etc.  We don't send a hard copy of materials to HQ (as much of the material is included as attachments in the petition itself), but we do send HQ emails or links as necessary, for example, to your rules when we are looking at a specific SIP provision.  Was there something specific you were looking for?

Let us know if this works for you and see you next week.
Thanks,
Susan

---

| "Dunn, Steven D - DNR" | The 19th Steve | 11/10/2009 09:29:24 AM |
|---|---|---|

| From: | "Dunn, Steven D - DNR" <Steven.Dunn@Wisconsin.gov> |
|---|---|
| To: | Susan Castellanos/R5/USEPA/US@EPA |
| Cc: | Danny Marcus/R5/USEPA/US@EPA |
| Date: | 11/10/2009 09:29 AM |
| Subject: | RE: Alliant-Columbia Petition |

```
The 19th

Steve

-----Original Message-----
From: Castellanos.Susan@epamail.epa.gov [
mailto:Castellanos.Susan@epamail.epa.gov]
Sent: Tuesday, November 10, 2009 9:28 AM
To: Dunn, Steven D - DNR
Cc: Marcus.Danny@epamail.epa.gov
Subject: Re: Alliant-Columbia Petition

Which Thursday?  The 12th or 19th?  I'm not in the office on the 12th.
```

The 19th would work for me though.

| | |
|---|---|
| From: | "Dunn, Steven D - DNR" <Steven.Dunn@Wisconsin.gov> |
| To: | Danny Marcus/R5/USEPA/US@EPA |
| Cc: | Susan Castellanos/R5/USEPA/US@EPA |
| Date: | 11/10/2009 09:26 AM |
| Subject: | Alliant-Columbia Petition |

Danny and Susan,

For the Alliant Columbia petition, would it be possible to meet with you two and Pam next Thursday morning?  I am in town for the enforcement training and this would be a convenient time to meet.  Andy Stewart would hook in by phone. Also, I would like to review the record sent to EPA HQ for this petition. Would it be possible to review that next Thursday?

Thanks,

Steve



**RE: Alliant-Columbia Petition**
**Dunn, Steven D - DNR   to: Susan Castellanos**                                    11/10/2009 02:42 PM
Cc:  Danny Marcus, Pamela Blakley

| From: | "Dunn, Steven D - DNR" <Steven.Dunn@Wisconsin.gov> |
|-------|----------------------------------------------------|
| To:   | Susan Castellanos/R5/USEPA/US@EPA |
| Cc:   | Danny Marcus/R5/USEPA/US@EPA, Pamela Blakley/R5/USEPA/US@EPA |

History:            This message has been replied to.

Susan,

Sounds great.  No specific information, just seeing what was in there.  I will
check SC's filing. We will write something up by Friday with specific
questions we have that you can look at and share with HQ.

Thanks!

Steve

-----Original Message-----
From: Castellanos.Susan@epamail.epa.gov [
mailto:Castellanos.Susan@epamail.epa.gov]
Sent: Tuesday, November 10, 2009 2:41 PM
To: Dunn, Steven D - DNR
Cc: Marcus.Danny@epamail.epa.gov; Blakley.Pamela@epamail.epa.gov
Subject: RE: Alliant-Columbia Petition

Steve -

We are all available Thurs morning.  Pam would like to tie in HQ to the
discussion we have on the petition Order to try to help resolve your
questions.  HQ has a window of availability on Thurs the 19th from 9:30 to
10:00 am.  Hopefully that works for you and Andy (to call in).
Perhaps we can meet at 9:00 am for a pre-meeting with you... Danny actually
gets in at 8:30 am so any time you want to come in is fine, and we don't have
anything else scheduled Thursday so we can meet with you as long as you'd
like.

HQ would like to know what we want to discuss.  I told them briefly that we
need to get clarification on the actual-to-projected-actual test and what
restrictions can be considered when calculating projections.  If you have
specific questions, please send them to us by COB this week so that we can
elevate to HQ before next Thurs.

Regarding the record sent to HQ for this petition, it included everything
Sierra Club cited to in its petition, that is, the past permits, past
exemption letters, etc.  We don't send a hard copy of materials to HQ (as much
of the material is included as attachments in the petition itself), but we do
send HQ emails or links as necessary, for example, to your rules when we are
looking at a specific SIP provision.  Was there something specific you were
looking for?

Let us know if this works for you and see you next week.
Thanks,
Susan

From:        "Dunn, Steven D - DNR" <Steven.Dunn@Wisconsin.gov>

To:          Susan Castellanos/R5/USEPA/US@EPA

Cc:          Danny Marcus/R5/USEPA/US@EPA

Date:        11/10/2009 09:29 AM

Subject:     RE: Alliant-Columbia Petition


The 19th

Steve

-----Original Message-----
From: Castellanos.Susan@epamail.epa.gov [
mailto:Castellanos.Susan@epamail.epa.gov]
Sent: Tuesday, November 10, 2009 9:28 AM
To: Dunn, Steven D - DNR
Cc: Marcus.Danny@epamail.epa.gov
Subject: Re: Alliant-Columbia Petition

Which Thursday?  The 12th or 19th?  I'm not in the office on the 12th.
The 19th would work for me though.


From:        "Dunn, Steven D - DNR" <Steven.Dunn@Wisconsin.gov>

To:          Danny Marcus/R5/USEPA/US@EPA

Cc:          Susan Castellanos/R5/USEPA/US@EPA

Date:        11/10/2009 09:26 AM

Subject:     Alliant-Columbia Petition


Danny and Susan,

For the Alliant Columbia petition, would it be possible to meet with you two
and Pam next Thursday morning?  I am in town for the enforcement training and
this would be a convenient time to meet.  Andy Stewart would hook in by phone.
Also, I would like to review the record sent to EPA HQ for this petition.
Would it be possible to review that next Thursday?



**WDNR Alliant Petition questions /agreements with USEPA petition response my ideas**

**Dunn, Steven D - DNR**   to: Susan Castellanos                     11/16/2009 10:52 AM
Cc:  Danny Marcus

| From: | "Dunn, Steven D - DNR" <Steven.Dunn@Wisconsin.gov> |
|-------|----------------------------------------------------|
| To:   | Susan Castellanos/R5/USEPA/US@EPA |
| Cc:   | Danny Marcus/R5/USEPA/US@EPA |
| History: | This message has been forwarded. |

Susan and Danny,

Here are our PSD questions on the Alliant petition.

Steve

1. WDNR concurs that Alliant's proposal was a "physical change" to an emissions unit.

2. WDNR concurs on the applicable PSD rules as contained in the Wisconsin SIP

3. S. NR 405.02(25s), Wis. Adm. Code (Sept. 2004 update) defines "Representative actual annual emissions".  The definition is:

"means the average rate, in tons per year, at which the source is projected to emit a pollutant for the 2-year period after a physical change or change in method of operation of a unit, or a different consecutive 2-year period within 10 years after the change, where the department determines that such a period is more representative of normal source operations, considering the effect of any such change will have on increasing or decreasing hourly emissions rate and on projected capacity utilization.  In projecting future emissions the department shall:

(a) Consider all relevant information, including but not limited to historical operational data, the company's own representations, filings with state or federal regulatory authorities, and compliance plans under title IV of the act

Given this definition is EPA stating one, or all, of the following:

- The Department chose the wrong two year period (actually 5 year period) to look at projected future actual emissions?  If so, how would the department determine a different period to use that was more representative of "normal operations"?

- If the 5 year period is not long enough to look at, how long of a period of "artificially constrained emissions" would be sufficient to demonstrate that no significant net emissions increase has occurred?  Does this "artificial constraint" need to be made permanent in an enforceable permit?

- The department did not consider all relevant information or failed to clearly explain how and what information was considered as outlined in subd. (a)?

4. The current Wisconsin SIP (s. NR 405.025, Wis. Adm. Code) allows for an emission increase to be calculated as follows:

"...any increase in actual emissions from a physical change or change in the method of operation at a stationary source shall equal the sum of the difference between the projected actual emissions and the

baseline actual emissions for each existing emissions unit involved in the project."

"Projected actual emissions: is defined as "means the maximum annual rate, in tons per year, at which an existing emissions unit is projected to emit a regulated NSR air contaminant in any one of the 5 years following the date the unit resumes regular operation after the project. If the project involves increasing the emissions unit's design capacity or the emissions unit's potential to emit the regulated NSR air contaminant, and full utilization of the emissions unit's capacity or potential would result in a significant net emissions increase, "projected actual emissions" means the maximum annual rate, in tons per year, at which an existing emissions unit is projected to emit a regulated NSR air contaminant in any one of the 10 years following the date the unit resumes regular operation after the project."

Under the present Wisconsin SIP, would a facility that "artificially constrained" its emissions to avoid an actual significant increase in emissions for the required 5 or 10 year period be able to avoid PSD?  If not, how would PSD be determined to apply to that facility?  If the emissions are "artificially constrained" is the Department to determine that this is not "regular operation" so as to require a longer projection?



**Call with WDNR regarding Columbia Petition Order  ((866) 299-3188 and code 3128863189#)**
**Susan Castellanos**   to: Stewart, Andrew M - DNR                11/19/2009 08:57 AM

| | |
|---|---|
| From: | Susan Castellanos/R5/USEPA/US |
| To: | "Stewart, Andrew M - DNR" <Andrew.Stewart@Wisconsin.gov> |

I wanted to get you the number for the call at 9:30 today.  Thanks.
—— Forwarded by Susan Castellanos/R5/USEPA/US on 11/19/2009 08:55 AM ——



**Accepted: Call with WDNR regarding Columbia Petition Order  ((866) 299-3188 and code 3128863189#)**
**Thu 11/19/2009** 9:30 AM - 10:00 AM

No Location Information

---

**Elliott Zenick** has accepted this meeting invitation

---

| Required: | Elliott Zenick/DC/USEPA/US@EPA, James Havard/DC/USEPA/US@EPA, Jane Woolums/R5/USEPA/US@EPA, Jeff Herring/RTP/USEPA/US@EPA, John Rowland/DC/USEPA/US@EPA, Juan Santiago/RTP/USEPA/US@EPA, Pamela Blakley/R5/USEPA/US@EPA, Robert Dresdner/DC/USEPA/US@EPA |
|---|---|

**Description**



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 5
77 WEST JACKSON BOULEVARD
CHICAGO, IL 60604-3590

DEC 1 4 2009

REPLY TO THE ATTENTION OF:
AE-17J

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ms. William D. Harvey
President and CEO
Wisconsin Power and Light Company
4902 North Biltmore Lane
Madison, Wisconsin 53718

Mr. William D. Harvey
President and CEO
Alliant Energy Corporation
4902 North Biltmore Land
Madison, Wisconsin 53718

Mr. Gary J. Wolter
President and CEO
Madison Gas and Electric Company
133 S. Blair Street
Madison, Wisconsin 53703

Mr. Gale E. Klappa
President and CEO
Wisconsin Electric Power Company
231 W. Michigan Street
Milwaukee, Wisconsin 53203

Mr. Charles A. Shrock
President and CEO
Wisconsin Public Service Corporation
700 N. Adams Street
Green Bay, WI 54307

RE:    Notice and Finding of Violation Concerning Nelson Dewey, Columbia, and Edgewater
Generating Stations

Dear Messrs. Harvey, Wolter, Klappa, and Shrock:

The U.S. Environmental Protection Agency is issuing the enclosed Notice and Finding of Violation (Notice) to Wisconsin Power and Light Company, Alliant Energy Corporation, Madison Gas and Electric Company, Wisconsin Electric Power Company, and Wisconsin Public Service Corporation (collectively "Respondents"). This Notice is issued in accordance with Section 113(a) of the Clean Air Act (the Act), 42 U.S.C. § 7413(a).

EPA has determined that Respondents are violating the Prevention of Significant Deterioration requirements under Section 165 of the Act, 42 U.S.C. § 7475, and/or the Wisconsin State Implementation Plan at the Nelson Dewey, Columbia, and Edgewater generating stations, located in Cassville, Portage, and Sheboygan, Wisconsin, respectively.

EPA is offering you an opportunity to confer with us about the violations cited in the Notice. The conference will give you an opportunity to present information on the specific findings of violations, and the steps you will take to bring the facility into compliance. Please

Recycled/Recyclable • Printed with Vegetable Oil Based Inks on 100% Recycled Paper (50% Postconsumer)

plan for your technical and management personnel to attend the conference to discuss compliance measures and commitments. You may have an attorney represent you at this conference.

You or your representative may contact Daniel Schaufelberger at (312) 886-6814 to request a conference. You should make your request for a conference no later than 10 calendar days after you receive this letter, and we should hold any conference within 30 calendar days of your receipt of this letter.

Sincerely,

Cheryl L. Newton
Director
Air and Radiation Division

Enclosure

cc:   John Hammen, Regional Leader
      Southeast Region
      Wisconsin Department of Natural Resources
      2300 North Dr. Martin Luther King Jr. Dr.
      Milwaukee, Wisconsin 53212

      Eileen Pierce, Regional Leader
      South Central Region
      Wisconsin Department of Natural Resources
      3911 Fish Hatchery Road
      Madison, Wisconsin 53711

      Bill Bauman, Section Chief, Compliance and Enforcement
      Wisconsin Department of Natural Resources
      Bureau of Air Management
      101 South Webster Street, P.O. Box 7921 (AM/7)
      Madison, Wisconsin 53702

      Michael S. Greiveldinger, Esq.
      Attorney for Wisconsin Power and Light Company
      4902 North Biltmore Lane
      Madison, Wisconsin 53718

      Environmental Counsel
      Wisconsin Power and Light Company
      4902 North Biltmore Lane
      Madison, Wisconsin 53718

      Environmental Counsel
      Alliant Energy Corporation
      4902 North Biltmore Lane
      Madison, Wisconsin 53718

Environment Counsel
Madison Gas and Electric Company
133 S. Blair Street
Madison, Wisconsin 53703

Environmental Counsel
Wisconsin Electric Power Company
231 W. Michigan Street
Milwaukee, Wisconsin 53203

Environmental Counsel
Wisconsin Public Service Corporation
700 N. Adams Street
Green Bay, Wisconsin 54307

# UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
## REGION 5

IN THE MATTER OF:    )

Alliant Energy Corporation   )
Madison, Wisconsin     )   Proceedings Pursuant to
            )   Section 113(a)(1) and (a)(3) of the
Madison Gas and Electric Company )   Clean Air Act,
Madison, Wisconsin     )   42 U.S.C. § 7413(a)(1) and (a)(3)
            )
Wisconsin Electric Power Company )   EPA-5-10-WI-01
Milwaukee, Wisconsin    )
            )
Wisconsin Power and Light Company )
Madison, Wisconsin     )
            )
Wisconsin Public Service Corporation )
Green Bay, Wisconsin     )

## NOTICE AND FINDING OF VIOLATION

This Notice and Finding of Violation (Notice) is issued to:

1. Wisconsin Power and Light Company (WPL) and Alliant Energy Company (Alliant or Alliant Energy), for violations of the Clean Air Act (the Act), 42 U.S.C. §§ 7401 *et seq.*, at the Nelson Dewey Generating Station located in Cassville, Wisconsin;

2. WPL, Alliant Energy, Wisconsin Public Service Corporation (WPS) and Madison Gas and Electric Company (MG&E), for violations of the Act, 42 U.S.C. §§ 7401 *et seq.*, at the Columbia Energy Center located in Portage, Wisconsin: and

3. WPL, Alliant Energy, WPS, and Wisconsin Electric Power Company (WEP), for violations of the Act, 42 U.S.C. §§ 7401 *et seq.*, at the Edgewater Generating Station located in Sheboygan, Wisconsin, respectively.

This Notice is issued pursuant to Sections 113(a)(1) and (a)(3) of the Act, 42 U.S.C. § 7413(a)(1) and (3). The authority to issue this Notice has been delegated to the Regional Administrator of U.S. Environmental Protection Agency, Region 5, and re-delegated to the Director, Air and Radiation Division.

## A. STATUTORY AND REGULATORY BACKGROUND

### Prevention of Significant Deterioration

1.    When the Act was passed in 1970, Congress exempted existing facilities, such as the coal-fired power plant that is the subject of this Notice, from many of its requirements, Congress made it quite clear that this exemption would not last forever. As the United States Court of Appeals for the D.C. Circuit explained in *Alabama Power v. Costle*, 636 F.2d 323, 400 (D.C. Cir. 1979), "[t]he statutory scheme intends to 'grandfather' existing industries; but ... this is not to constitute a perpetual immunity from all standards under the [Prevention of Significant Deterioration (PSD)] program." Rather, the Act requires grandfathered facilities to install modern pollution control devices whenever the unit is proposed to be modified in such a way that its emissions may increase.

2.    The PSD provisions of Part C of Title I of the Act require preconstruction review and permitting for modifications of stationary sources. *See* 42 U.S.C. §§ 7470-7492. Pursuant to applicable regulations, if a major stationary source located in an attainment or unclassified area is planning to make a major modification, then that source must obtain a PSD permit before beginning actual construction. *See* 40 C.F.R. § 52.21(a)(2)(i). To obtain this permit, the source must, among other things, undergo a technology review and apply the Best Available Control Technology (BACT); perform a source impact analysis; perform an air quality analysis and modeling; submit appropriate information; and conduct additional impact analyses as required.

3.    Pursuant to Section 110 of the Act, 42 U.S.C. § 7410, each State is responsible for submitting to EPA for approval an implementation plan which specifies how the State will achieve, maintain, and enforce all primary and secondary National Ambient Air Quality Standards (NAAQS) in the State.

4.    Under Section 110(a) of the Act, each State Implementation Plan (SIP) must include a permit program to regulate the modification and construction of any stationary source of air pollution as necessary to assure that NAAQS are achieved. SIPs must include enforceable emission limitations, control measures, and schedules for compliance. Upon EPA's approval of a SIP, the plans become independently enforceable by the federal government, as stated under Section 113(a) of the Act, 42 U.S.C. § 7413(a).

5.    On June 19, 1978, EPA promulgated PSD regulations pursuant to Part C of Title I of the Act. 43 *Fed. Reg.* 26403 (June 19, 1978). These regulations, codified at 40 C.F.R. § 52.21, apply to any major stationary source or major modification that would be constructed in an area designated as attainment or unclassified under the Act.

6.    The PSD regulations, at 40 C.F.R. § 52.21(a)(1), state that, "[t]he provisions of this section are applicable to any [SIP] which has been disapproved with respect to prevention of significant deterioration of air quality in any portion of any State where the existing air quality is better than the national ambient air quality standards."

2

7.    EPA granted final approval to Wisconsin's PSD program on May 27, 1999 (64 *Fed. Reg.* 28745), which became effective on June 28, 1999.  On December 31, 2002, EPA published revisions to the Federal PSD and Nonattainment New Source Review (NANSR) regulations in 40 C.F.R. Parts 51 and 52 (67 *Fed. Reg.* 80186). These revisions are commonly referred to as the New Source Review (NSR) Reform Rule and became effective as part of the federal PSD program on March 3, 2003.  EPA approved the Wisconsin Department of Natural Resources' program revision for the NSR Reform Rule on December 17, 2008 (73 *Fed. Reg.* 76560), which became effective as part of Wisconsin's federally approved SIP on January 16, 2009.

8.    The PSD regulations included as part of Wisconsin's federally approved SIP at the time of the projects identified in Appendix A are the regulations that are applicable and federally enforceable for purposes of this NOV/FOV.

9.    Wis. Admin. Ch. NR 406.03 in pertinent part provides that "[n]o person may begin construction, reconstruction, replacement, relocation or modification of a stationary source unless the person has a construction permit for the source . . . ." [1]

10.    Wis. Admin. Ch. NR 405.01 provides that "[t]he provisions of this chapter [NR 405] apply to all new major stationary sources and all major modifications to major sources located in areas designated as attainment or unclassified."[2]

11.    Wis. Admin. Ch. NR 405.07 provides in pertinent part that "[n]o major stationary source or major modification may begin actual construction unless the requirements of ss. NR 405.08 to 405.16 have been met."[3] Wis. Admin. Ch. NR 405.08 to 405.16 require, among other things, a control technology review, a source impact analysis, an air quality analysis and modeling, adequate source information, and additional impact analyses, and installation of appropriate emissions control equipment in accordance with a BACT analysis.

12.    Wis. Admin. Ch. NR 405.02(21) defines "major modification" as "any physical change in or change in the method of operation of a major stationary source that would result

---

[1]     Prior to March 3, 2003, 40 C.F.R. § 52.21(i)(1) provided that "No stationary source or modification to which the requirements of paragraphs (j) through (r) of this section apply shall begin actual construction without a permit which states that the stationary source or modification would meet those requirements."

[2]     Prior to March 2, 2003, 40 C.F.R. § 52.21(i)(3) provided that "[t]he requirements of paragraphs (j) through (r) of this section apply only to any major stationary source or major modification that would be constructed in an area designated as attainment or unclassifiable . . . ."

[3]     See n. 2 above.

3

in a significant net emissions increase of any air contaminant subject to regulation under the act."[4]

13.    Wis. Admin. Ch. NR 405.02(22) defines "major stationary source" in pertinent part as "[a]ny of the following stationary sources of air contaminants which emits, or has the potential to emit, 100 tons per years or more of any air contaminant subject to regulation under the act: Fossil fuel fired steam electric plants of more than 250 million British thermal units per hour hear input . . . ."[5]

14.    "Net emissions increase" is defined in Wis. Admin Ch. NR 405.02(24) and a net emissions increase is defined as "significant" if it meets the requirements in Wis. Admin. Ch. 405.02(27).[6]

### Title V Requirements

15.    Section 502(a) of the Act, 42 U.S.C. § 7661a(a), provides that no source may operate without a Title V permit after the effective date of any permit program approved or promulgated under Title V of the Act.  EPA first promulgated regulations governing state operating permit programs on July 21, 1992. *See* 57 *Fed. Reg.* 32295; 40 C.F.R. Part 70. EPA promulgated regulations governing the Federal operating permit program on July 1, 1996. *See* 61 *Fed. Reg.* 34228; 40 C.F.R. Part 71.

16.    Section 503 of the Act, 42 U.S.C. § 7661b, sets forth the requirement to submit a timely, accurate, and complete application for a permit, including information required to be submitted with the application.

17.    Section 504(a) of the Act, 42 U.S.C. § 7661c(a), requires that each Title V permit include enforceable emission limitations and standards, a schedule of compliance, and other conditions necessary to assure compliance with applicable requirements, including those contained in a state implementation plan. 42 U.S.C. § 7661c(a).

18.    40 C.F.R. § 70.1(b) provides that: "All sources subject to these regulations shall have a permit to operate that assures compliance by the source with all applicable requirements."  <u>See</u> <u>also</u> Wis. Admin. Code Ch. NR 407.08 and 407.09.

---

[4]    Prior to March 3, 2003, 40 C.F.R § 52.21 (b)(2)(i) defined "major modification" as "any physical change in or change in the method of operation of a major stationary source that would result in a significant net emissions increase" of a regulated pollutant..

[5]    Prior to March 3, 2003, 40 C.F.R § 52.21 (b)(1)(i)(a) defined "major stationary source" in pertinent part as: "[a]ny of the following stationary sources of air pollutants which emits, or has the potential to emit, 100 tons per year or more of any pollutant subject to regulation under the Act:  Fossil fuel-fired steam electric plants of more than 250 million British thermal units per hour heat input . . . ."

[6]    Prior to March 3, 2003, "net emissions increase" was defined in 40 C.F.R. § 52.21(b)(3) and a net emissions increase was defined as "significant" if it met the requirements in 40 C.F.R. § 52.21(b)(23).

19.   40 C.F.R § 70.2 defines "applicable requirement" to include, "(1) Any standard or other requirement provided for in the applicable implementation plan approved or promulgated by EPA through rulemaking under title I of the Act that implements the relevant requirements of the Act, including revisions to that plan promulgated in part 52 of this chapter . . ."

20.   40 C.F.R. § 70.7(b) provides that no source subject to 40 C.F.R. Part 70 requirements may operate without a permit as specified in the Act.  See also Wis. Admin. Code Ch. NR 407.08.

21.   40 C.F.R. § 70.5(a) and (c) require timely and complete permit applications for Title V permits with required information that must be submitted and 40 C.F.R. § 70.6 specifies required permit content.  See also Wis. Admin. Code Ch. NR 407.04, 407.05, and 407.06.

22.   40 C.F.R. § 70.5(b) provides that:  "Any applicant who fails to submit any relevant facts or who has submitted incorrect information in a permit application shall, upon becoming aware of such failure or incorrect submittal, promptly submit such supplementary facts or corrected information. In addition, an applicant shall provide additional information as necessary to address any requirements that become applicable to the source after the date it filed a complete application but prior to release of a draft permit."  See also Wis. Admin. Code Ch. NR 407.05(9).

## Wisconsin's Title V Requirements

23.   EPA gave interim approval of the Wisconsin Title V program on March 6, 1995. See 60 Fed. Reg. 12128 (effective on April 5, 1995).  EPA fully approved the Wisconsin Title V program on December 4, 2001,  See 66 Fed. Reg. 62951 (effective on November 30, 2001).

24.   The Wisconsin regulations governing the Title V permitting program are codified at Wis. Admin. Code Ch. NR 407, and are federally enforceable pursuant to Section 113(a)(3) of the Act.

25.   Wis. Admin. Code Ch. NR 407.09(1)(a) requires each Title V permit issued under Ch. NR 407 shall include "[e]mission limitations and standards, including those operational requirements and limitations that are applied to assure compliance with all applicable requirements at the time of permit issuance . . . ." (40 C.F.R. § 70.1(b)).

26.   Wis. Admin. Code Ch. NR 407.08 provides that it is unlawful to operate, among other things, a major source or a modified source except in compliance with an operation permit issued by the permitting authority, as required by Title V.  (40 C.F.R. § 70.7(b)).

27.   Wis. Admin. Code Ch. NR 407.04, 407.05, and 407.06 require permit applicants to submit timely and complete permit applications with all information required for operation permits, as required by Title V.  (40 C.F.R. § 70.5(a) and (c)).

5

28. Wis. Admin. Code Ch. 407.04 requires that permit applications for Title V operation permits for modified sources for which a construction permit is required shall be submitted by the date that the application for a construction permit is filed.

29. Wis. Admin. Code Ch. NR 407.09 specifies the required permit content, as required by Title V. (40 C.F.R. § 70.6).

30. Wis. Admin. Code Ch. NR 407.05(9) provides that "[a]n applicant who has failed to submit relevant facts or has submitted incorrect information in a permit application shall, after becoming aware of this fact, promptly submit the supplemental or corrected information," and in addition, "shall provide any additional information as necessary to address any requirements that become applicable after the date the applicant filed a complete application . . ." (40 C.F.R. § 70.5(b)).

## B. FACTUAL BACKGROUND

31. At all times relevant to this Notice, Wisconsin Power and Light Company (WPL), a subsidiary of Alliant Energy Corporation (Alliant or Alliant Energy), was an owner and operator of the Nelson Dewey Generating Station, the Columbia Energy Center, and the Edgewater Generating Station. At all times relevant to this Notice, Madison Gas and Electric Company (MG&E) was an owner of the Columbia Energy Center. At all times relevant to this Notice, Wisconsin Electric Power Company (WEP) was an owner of the Edgewater Generating Station. At all times relevant to this Notice, Wisconsin Public Service Corporation (WPS) was an owner of the Columbia Energy Center and the Edgewater Generating Station. Collectively, for purposes of this Notice, WPL, Alliant, MG&E, WEP, and WPS are known as the "Respondents".

32. Nelson Dewey Generating Station is located in Cassville, Grant County, Wisconsin; Columbia Generating Station is located in Portage, Columbia County, Wisconsin; and Edgewater Generating Station is located in Sheboygan, Sheboygan County, Wisconsin. All three of these Counties are classified as attainment for PM, $NO_x$, and $SO_2$ for all time periods relevant to the violations cited herein.

33. Nelson Dewey Generating Station is a fossil fuel-fired electric utility and steam generating station of more than 250 million British thermal units per hour (MMBtu/hr), and has a potential to emit of greater than 100 tons per year of $NO_x$, $SO_2$, CO, and PM. The station consists of two coal/petcoke/tire derived fuel-fired boilers for electric generation. Unit 1 was designed with a maximum heat input of        MMBtu/hr with a net generating capacity of        MW and was constructed in 1959. Unit 2 was designed with a maximum heat input of        MMBtu/hr with a net generating capacity of        MW and was constructed in 1962.

34. Columbia Energy Center is a fossil fuel-fired electric utility and steam generating station of more than 250 million British thermal units per hour (MMBtu/hr), and has a potential to emit of greater than 100 tons per year of $NO_x$, $SO_2$, CO, and PM.

The station consists of two coal-fired boilers for electric generation. Unit 1 was designed with a maximum heat input of          MMBtu/hr with a net generating capacity of          MW and was constructed in 1975. Unit 2 was designed with a maximum heat input of          MMBtu/hr with a net generating capacity of          MW and was constructed in 1976.

35.    Edgewater Generating Station is a fossil fuel-fired electric utility and steam generating station of more than 250 million British thermal units per hour (MMBtu/hr), and has a potential to emit of greater than 100 tons per year of $NO_x$, $SO_2$, CO, and PM. The station consists of two coal/tire derived fuel-fired boilers and one coal-fire boiler for electric generation. Unit 3 was designed with a maximum heat input of          MMBtu/hr with a net generating capacity of          MW and was constructed in 1951. Unit 4 was designed with a maximum heat input of          MMBtu/hr with a net generating capacity of          MW and was constructed in 1969. Unit 5 was designed with a maximum heat - input of          MMBtu/hr with a net generating capacity of          MW and was constructed in 1985.

36.    Nelson Dewey Generating Station, Columbia Energy Center, and Edgewater Generating Station are each fossil fuel-fired steam electric plants of more than 250 MMBtu/hr heat input. Therefore, each station constitutes a "major stationary source" within the meaning of Wis. Admin. Code Ch. NR 405.02(22) and 40 C.F.R. § 52.21(b)(1)(i)(a); and a "major emitting facility" within the meaning of Section 169(1) of the Act, 42 U.S.C. § 7479(1).

37.    Between the years 2000 and 2008, various physical changes and/or changes in the method of operation were made at Nelson Dewey, Columbia, and Edgewater generating stations. A description of the changes, grouped by project, is included in Appendix A.

## C.  NOTICE AND FINDING OF VIOLATIONS

### Violations of the Prevention of Significant Deterioration Provisions

38.    Each of the projects identified in Appendix A caused a significant net emissions increase, as defined at 40 C.F.R. § 52.21 and Wis. Admin. Code Chapter NR 405.02(24) and (27), for $SO_2$, $NO_x$ and/or PM.

39.    Each project identified in Appendix A constitutes a "major modification," as that term is defined at 40 C.F.R. § 52.21(b)(2)(i), and Wis. Admin. Code Chapter NR 405.02(21), of the Wisconsin SIP.

40.    Each of the projects identified in Appendix A for the Nelson Dewey Generating Station is a major modification that caused a significant net emissions increase of a regulated pollutant or regulated air contaminant within the meaning of the Act, 40 C.F.R. § 52.21, and Wis. Admin. Ch. NR 405.02(21), (24) and (27). For each such project, WPL and Alliant failed to apply for or obtain a construction permit prior to

commencing construction of the project. For each project identified in Appendix A for the Nelson Dewey Generating Station, WPL and Alliant violated, and continue to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), 40 C.F.R. § 52.21, and Wis. Admin. Code Chapter NR 405 and 406, by commencing construction on, and continuing to operate, a major modification at the Nelson Dewey Generating Station without applying for or obtaining a construction permit for the project. For each such project, WPL and Alliant failed to perform a technology review, a source impact analysis, and an air quality analysis and modeling, failed to submit appropriate information and conduct additional impact analyses for the project, and failed to install appropriate emissions control equipment in accordance with a BACT analysis, prior to commencing construction on the project. For each such project, WPL and Alliant violated, and continue to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a) of the Act, 42 C.F.R. § 52.21, and Wis. Admin. Code Chapter NR 405 and 406, by failing to perform a technology review, a source impact analysis, and an air quality analysis and modeling, by failing to submit appropriate information and conduct additional impact analyses for the project, and by failing to install appropriate emissions control equipment in accordance with a BACT analysis, prior to commencing construction on the project, and by continuing to operate the facility as modified by the project without BACT.

41.   Each of the projects identified in Appendix A for the Columbia Energy Center is a major modification that caused a significant net emissions increase of a regulated pollutant or regulated air contaminant within the meaning of the Act, 40 C.F.R. § 52.21, and Wis. Admin. Ch. NR 405.02(21), (24) and (27). For each such project, WPL, Alliant, MG&E, and WPS failed to apply for or obtain a construction permit prior to commencing construction on the project. For each such project, WPL, Alliant, MG&E, and WPS violated, and continue to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), 40 C.F.R. § 52.21, and Wis. Admin. Code Chapter NR 405 and 406, by commencing constructing on, and continuing to operate, a major modification at the Columbia Energy Center without applying for or obtaining a construction permit for the project. For each such project, WPL, Alliant, MG&E, and WPS failed to perform a technology review, a source impact analysis, and an air quality analysis and modeling, failed to submit appropriate information and conduct additional impact analyses for the project, and failed to install appropriate emissions control equipment in accordance with a BACT analysis, prior to commencing construction on the project. For each such project, WPL, Alliant, MG&E, and WPS violated, and continue to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), 42 C.F.R. § 52.21, and Wis. Admin. Code Chapter NR 405 and 406, by failing to perform a technology review, a source impact analysis, and an air quality analysis and modeling, by failing to submit appropriate information and conduct additional impact analyses for the project, and by failing to install appropriate emissions control equipment in accordance with a BACT analysis, prior to commencing construction on the project, and by continuing to operate the facility as modified the project without BACT.

42.   Each of the projects identified in Appendix A for the Edgewater Generating Station is a major modification that caused a significant net emissions increase of a regulated pollutant or regulated air contaminant within the meaning of the Act, 40 C.F.R.

§ 52.21, and Wis. Admin. Ch. NR 405.02(21), (24) and (27). For each such project, WPL, Alliant, WEP, and/or WPS failed to apply for or obtain a construction permit prior to commencing construction on the project. For each such project, WPL, Alliant, WEP, and/or WPS violated, and continue to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), 40 C.F.R. § 52.21, and Wis. Admin. Code Chapter NR 405 and 406, by commencing construction, and continuing to operate, a major modification at the Edgewater Generating Station without applying for or obtaining a construction permit for the project. For each such project, WPL, Alliant, WEP, and/or WPS failed to perform a technology review, a source impact analysis, and an air quality analysis and modeling, failed to submit appropriate information and conduct additional impact analyses for the project, and failed to install appropriate emissions control equipment in accordance with a BACT analysis, prior to commencing construction on the project. For each such project, WPL, Alliant, WEP and/or WPS violated, and continue to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), 42 C.F.R. § 52.21, and Wis. Admin. Code Chapter NR 405 and 406, by failing to perform a technology review, a source impact analysis, and an air quality analysis and modeling, by failing to submit appropriate information and conduct additional impact analyses for the project, and by failing to install appropriate emissions control equipment in accordance with a BACT analysis, prior to commencing construction on the project, and by continuing to operate the facility as modified by the project without BACT.

43.    WPL and Alliant failed to submit timely and complete Title V permit applications for the Nelson Dewey Generating Station with information pertaining to the modifications identified in Appendix A and with information concerning all applicable requirements, including, but not limited to, the requirement to apply, install and operate BACT for $NO_X$, $SO_2$, and/or PM at the plant, and also failed to supplement or correct the Title V permit applications for the plant, in violation of Sections 502, 503 and 504 of the Act, 42 U.S.C. §§ 7661a, 7661b and 7661c; the regulations at 40 C.F.R. Part 70, including, but not limited to, 40 C.F.R. §§ 70.1(b), 70.5(a), (b) and (c), 70.6 and 70.7(b); and Wisconsin Title V provisions at NR 407.

44.    WPL, Alliant, MG&E, and WPS failed to submit timely and complete Title V permit applications for the Columbia Energy Center with information pertaining to the modifications identified in Appendix A and with information concerning all applicable requirements, including, but not limited to, the requirement to apply, install and operate BACT for $NO_X$, $SO_2$, and/or PM at the plant, and also failed to supplement or correct the Title V permit applications for the plant, in violation of Sections 502, 503 and 504 of the Act, 42 U.S.C. §§ 7661a, 7661b and 7661c; the regulations at 40 C.F.R. Part 70, including, but not limited to, 40 C.F.R. §§ 70.1(b), 70.5(a), (b) and (c), 70.6 and 70.7(b); and Wisconsin Title V provisions at NR 407.

45.    WPL, Alliant, WEP and/or WPS failed to submit timely and complete Title V permit applications for the Edgewater Generating Station with information pertaining to the modifications identified in Appendix A and with information concerning all applicable requirements, including, but not limited to, the requirement to apply, install and operate BACT for $NO_X$, $SO_2$, and/or PM at the plant, and also failed to supplement or

9

correct the Title V permit applications for the plant, in violation of Sections 502, 503 and 504 of the Act, 42 U.S.C. §§ 7661a, 7661b and 7661c; the regulations at 40 C.F.R. Part 70, including, but not limited to, 40 C.F.R. §§ 70.1(b), 70.5(a), (b) and (c), 70.6 and 70.7(b); and Wisconsin Title V provisions at NR 407.

## D. ENFORCEMENT

46.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b), whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or the PSD provisions of the Wisconsin SIP. *See also* 40 C.F.R. § 52.23.

47.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; and up to $32,500 per day for each such violation occurring on or after March 16, 2004 through January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, 40 C.F.R. § 19.4, and 74 *Fed. Reg.* 626 (Jan. 7, 2009) against any person whenever such person has violated, or is in violation of, *inter alia*, the requirements or prohibitions described in the preceding paragraph.

48.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an action for injunctive relief, as necessary to prevent the construction, modification or operation of a major emitting facility which does not conform to the PSD requirements in Part C of the Act.

Dated: 12/14/09

Cheryl L. Newton
Director
Air and Radiation Division

## Appendix A

| Facility/Unit | Project Year | Projects |
|---|---|---|
| Nelson Dewey – Unit 1 | 2000 | - Replace superheat and reheat pendant section, screen tube replacements |
| | 2003 | - Redesign and fabricate a complete cyclone furnace and reentrant throat, install an overfire air system, increase FD fan capacity/increase total air flow to the boiler |
| Nelson Dewey – Unit 2 | 2001 | - Replace superheater and reheat pendant section |
| | 2002 | - Redesign and fabricate a complete cyclone furnace and reentrant throat, install an overfire air system |
| Columbia – Unit 1 | 2006 | - Replace economizer, final superheater, superheater pendant, and feedwater heaters |
| | 2002 | - Replace entire original reheater |
| | 2007 | - Replace entire deflection arch section of the rear waterwall |
| Columbia – Unit 2 | 2004 | - Replace final superheat and lower pendant platen |
| | 2005 | - Replace reheater and superheater division panels |
| | 2008 | - Replace front and rear waterwalls |
| Edgewater – Unit 4 | 2002 | - Replace primary superheater |
| | 2005 | - Replace reheater outlet section |
| Edgewater – Unit 5 | 2008 | - Replace secondary superheater inlet section, replace superheater platen and condenser tubes |

*Previous CBI Claim for Appendix A Has Been Waived*



**Columbia placeholder language**
Susan Castellanos   to: Stewart, Andrew M - DNR                    01/28/2010 03:56 PM

From:      Susan Castellanos/R5/USEPA/US
To:        "Stewart, Andrew M - DNR" <Andrew.Stewart@Wisconsin.gov>

Hi Andy -

The following is some suggested language from ORC.

"On [date], EPA issued a [Notice of Violation/Finding of Violation] to [source]. Because EPA has alleged that [source] is not in compliance with all applicable Clean Air Act requirements, [permitting authority] cannot issue a Title V permit to [source] that serves as a shield to the alleged violations. Therefore, the permit shield provided for in 42 U.S.C. § 7661c(f), 40 C.F.R. § 70.6(f), [state permit shield provision], and [permit shield section of permit] does not apply to, and compliance with the permit does not serve as proof of compliance with [specific violations alleged in NOV/FOV] at [specific units]. [Permitting authority] will reopen the permit at the conclusion of the enforcement action to incorporate into the permit any applicable requirements, compliance schedules or other terms developed or required by the resolution of the enforcement action."


We recommend that you include this language in the permit itself. It could go into the section for the units in question (that is, those under investigation) or it could go up-front by the shield section, with a cite back to it for the units in question. We also suggest including some language in the PD to explain that WDNR will address this issue (that EPA granted) in the petition response Order after resolution of the NOV.

Please feel free to contact Pam or myself anytime if you have any further questions.

Thanks,
Susan



**State of Wisconsin \ DEPARTMENT OF NATURAL RESOURCES**

Jim Doyle, Governor
Matthew J. Frank, Secretary

101 S. Webster St.
Box 7921
Madison, Wisconsin 53707-7921
Telephone 608-266-2621
FAX 608-267-3579
TTY Access via relay - 711

WISCONSIN
DEPT. OF NATURAL RESOURCES

February 10, 2010

Cheryl Newton, Director                                                    FID#: 111003090
Air and Radiation Division
USEPA, Region 5
77 West Jackson Blvd.
Chicago, IL  60604

     Subject:  EPA Order regarding Wisconsin Power & Light (Alliant Energy) Columbia Generating Station
Permit No. 111003090-P20

Dear Ms. Newton:

On September 3, 2008, the Sierra Club submitted a Petition to EPA requesting EPA object to the Title V permit
issued by the Wisconsin Department of Natural Resources for Wisconsin Power & Light Columbia Generating
Station (Permit No. 111003090-P20). On October 9, 2009, EPA issued an Order granting in part and denying in
part the Petition. The Order specifies that the Wisconsin Department of Natural Resources (WDNR) has 90 days
from receipt of the Order (October 28) to resolve the objections and revise the permits. The purpose of this letter
is to provide you with a report on progress made to resolve the issues granted in the petition.

WDNR is working to complete the Preliminary Determination and Draft Permit for the revision of the Wisconsin
Power & Light Columbia Generating Station permit and anticipates publishing the Public Notice during February
or early March. To date, WDNR has done a number of things to develop the revisions necessary to satisfy the
Order. WDNR has:

- held a series of discussions with staff from US EPA Headquarter and Region 5 to clarify issues presented in
  the Order. The issues in the Order pertain to regulations that have since been revised. WDNR feels it is
  essential for all parties to be clear on the rules in place at the time permit decisions were made and these
  discussions helps to ensure that to be the case.
- met and held discussions with staff from Alliant Energy to determine whether the existing record is complete.
  It has been verified through this process that the record is complete and that all pertinent information will be
  considered in the revision.
- re-reviewed the existing record in light of parts of the petition granted in the Order. This review will serve as
  the basis for the revisions that will be proposed to resolve the issues identified in the Order.

In addition, the WDNR convened a public stakeholder process in November 2009 to gather input on the issues
raised in the Orders for both the Columbia Generating Station and Oak Creek Power Plant. This process is
expected to run for approximately six months and will identify areas in WDNR's New Source and Title V
permitting programs that could be improved or changed in order to reduce, if not eliminate, the potential for these
issues to appear in future Title V permits. To date, two of four meetings focused on the issues raised and a third is
scheduled for February 24th. Further information on this process can be obtained at
http://dnr.wi.gov/air/permits/titleVpermits.html.

A final decision on the operation permit revisions will not be made until the public has had an opportunity to
comment on WDNR's Preliminary Determination and Draft Permit. EPA will be given the opportunity to
comment on the proposed operation permit revisions after the public notice period and after any appropriate


Printed on
Recycled
Paper

changes based on public comments. The conditions proposed in the Draft Permit revisions may be further revised in any final Operation Permit revisions issued based on comments received or upon further evaluation by the WDNR. We will continue to work on the review and issuance of the revisions with all appropriate speed.

Please let me know if you have any questions or concerns regarding this matter.

Sincerely,

John H. Melby, Jr. - Director
Bureau of Air Management
john.melbyjr@wisconsin.gov
608-264-8884 (telephone)

cc:    Andrew Stewart - AM/7
       Tom Steidl - LS/8
       Jerald Lokenvitz, WPL-Columbia Energy Center, W8375 Murray Road, Pardeeville, WI 53954
       David C. Bender, McGillivray Westerberg & Bender LLC, 305 S. Paterson St., Madison, WI  53703

# 8 

----- Forwarded by Cheryl Newton/R5/USEPA/US on 07/26/2010 10:51 AM -----

| | |
|---|---|
| From: | "Melby Jr, John H - DNR" <John.MelbyJr@Wisconsin.gov> |
| To: | Cheryl Newton/R5/USEPA/US@EPA |
| Date: | 07/21/2010 10:29 AM |
| Subject: | Columbia |

Cheryl

I have a meeting on Thursday with Alliant, MG&E and WPS.  More to come after the meeting.

John

PS: I can't see a scenario of us sending the issue back to you to solve.

John H. Melby, Jr. - Director
Bureau of Air Management,  AM/7
Wisconsin Department of Natural Resources
101 S. Webster Street
P.O. Box  7921
Madison, WI   53707-7921
E-mail  john.melbyjr@wisconsin.gov
608-264-8884 (telephone)
608-516-2495 (cell)