UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SIERRA CLUB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cv-116 |
| ) | |
| LISA JACKSON, Administrator of the United ) | |
| States Environmental Protection Agency, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Declaration of Cheryl L. Newton

I, Cheryl L. Newton, under penalty of perjury, affirm and declare that the following statements are true and correct to the best of my knowledge and belief, and are based on my own personal knowledge or on information contained in the records of the U.S. Environmental Protection Agency or supplied to me by EPA employees under my supervision.

1. I am the Director of the Air and Radiation Division in Region 5, a position I have held since November of 2008. Prior to that I held other positions in the Air and Radiation Division, including the Deputy Director and the Chief of the Permits and Grants Section for Illinois, Indiana, and Ohio.

2. In my current capacity as Director, I am responsible for implementation of the Clean Air Act (Act), and programs under the responsibility of EPA Region 5 that are related to the Act, including but not limited to: promulgation of certain rules pursuant to the Act, the approval of state implementation plans, the protection of the National Ambient Air Quality Standards, oversight of the state's permitting programs, issuing federal permits, administering grants, and enforcement and compliance activities.

3. In the Air Permit Section there are currently ten full time staff and one part time staff to oversee all permitting related activities in six states and thirty five tribal areas. These activities include but are not limited to: the approval of permit related rules, issuance of federal permits, review of state issued construction and operation permits, and preparation of responses to Title V petitions. There are approximately 2,846 Title V sources in Region 5 states, thus, Region 5 staff frequently are assigned to numerous complex permitting related actions at one time.

4. Section 502(d)(1) of the Act, 42 U.S.C. § 7661a(d)(1), requires each state to develop and submit to EPA an operating permit program to meet the requirements of Title V. EPA

granted final full approval of the Wisconsin Title V operating permit program effective November 30, 2001. 66 Fed. Reg. 62946 (December 4, 2001).

5. All major stationary sources of air pollution and certain other sources are required to apply for Title V operating permits that include emission limitations and other conditions necessary to assure compliance with applicable requirements of the Act, including the requirements of the applicable SIP. See sections 502(a) and 504(a) of the Act, 42 U.S.C. §§ 7661a(a) and 7661c(a). The Title V operating permit program generally does not impose new substantive air quality control requirements (referred to as "applicable requirements"), but does require that permits contain monitoring, recordkeeping, reporting, and other requirements to assure compliance by sources with applicable emission control requirements. 57 Fed. Reg. 32250, 32251 (July 21, 1992) (EPA final action promulgating 40 C.F.R. Part 70).

6. Under section 505(a) of the Act, 42 U.S.C. § 7661d(a), and the relevant implementing regulations at 40 C.F.R. § 70.8(a), states are required to submit each proposed Title V operating permit to EPA for review. Upon receipt of a proposed permit, EPA has 45 days to object to final issuance of the permit if EPA determines the permit is not in compliance with applicable requirements or the requirements of Title V. 40 C.F.R. § 70.8(c). If EPA does not object to a permit on its own initiative, section 505(b)(2) of the Act provides that any person may petition the Administrator, within 60 days of expiration of EPA's 45-day review period, to object to the permit. 42 U.S.C. § 7661d(b)(2). See also 40 C.F.R. § 70.8(d).

7. If EPA determines, in response to a petition, that a state-issued permit is not in compliance with all requirements of the Act or regulations, the Administrator must object to its issuance, and the permitting authority shall have 90 days to resolve EPA's objections. See, e.g., 40 C.F.R. §§ 70.7(g)(4) and 70.8(d). If the permitting authority fails to act, EPA will modify, terminate or revoke and reissue the permit using the procedures of 40 C.F.R. Part 70 or 71, as appropriate. See, e.g., 40 C.F.R. §§ 70.7(g)(5) and 71.4(e). The Region generally is delegated the authority to administer Parts 70 and 71 (Delegation: 7-114. Implementation of Operating Permits Program. 1200 TN 514. 07/26/2000).

8. On October 8, 2009, EPA issued an Order responding to a petition submitted on September 3, 2008, in which Sierra Club asked EPA to object to the issuance of a Title V permit by the Wisconsin Department of Natural Resources (WDNR) for the Alliant Energy (formerly Wisconsin Power and Light) Columbia Generating Station (Columbia). In the Order, EPA partially granted the petition. Specifically, EPA granted the petition on the issue of whether Columbia was subject to New Source Review (NSR) preconstruction permitting based upon a project that occurred at Columbia in 2006. The Order identified flaws in WDNR's analysis of the issue and directed the WDNR to re-evaluate the applicability of NSR requirements.

9. On December 14, 2009, EPA issued a notice of violation (NOV) to Alliant Energy (and other parties) alleging, among other violations of the Act, that Columbia was subject to

NSR preconstruction permitting based upon the same 2006 project at Columbia addressed in the petition response Order. Since the issuance of the NOV, EPA Region 5 enforcement staff have held numerous settlement negotiation meetings with the facility.

10. During late 2009 and early 2010, EPA and WDNR discussed the Order in numerous emails, meetings, and telephone conferences. In February 2010, WDNR sent a letter to me updating me on its progress in issuing a permit in response to the Order, including actions that WDNR had undertaken as well as planned actions for the next few months.

11. On July 21, 2010, shortly after EPA received Sierra Club's July 14, 2010 notice of intent to sue EPA for failing to take over the Columbia Title V permit, I discussed with John H. Melby, Director, WDNR, the State's progress in issuing a revised permit. Mr. Melby informed me that he would be meeting with Alliant Energy to discuss the draft permit.

12. On September 23, 2010, WDNR published for notice and comment a draft after-the-fact "synthetic minor" construction permit[1] and a draft Title V operation permit revision for Columbia to address the 2006 modification and EPA's Order. In a November 24, 2010 letter, I informed WDNR of my belief that the draft permits are not responsive to the Order and that the issuance of an after-the-fact "synthetic minor" permit is contrary to the Act and Prevention of Significant Deterioration regulations.

13. During late 2010 and early 2011, EPA and WDNR continued to discuss the Order in numerous emails, telephone conferences and meetings. At the same time, Region 5 enforcement staff continued to engage in settlement negotiation discussions with the facility. While assisting WDNR in addressing the petition response Order, Region 5 permitting staff tracked the progress of the concurrent enforcement action on the same issue because, if the enforcement concluded before the Title V permit was revised to address the Administrator's Order, the resolution would likely affect, or at the very least help inform, WDNR's permitting decision on the same issue.

14. On May 26, 2011, WDNR issued a revised draft Title V permit for public comment. The public comment period closed on or around June 27, 2011.

15. On June 27, 2011, both Sierra Club and Alliant Energy submitted comments to WDNR on the draft Title V permit.

16. During the summer and fall of 2011, Region 5 permitting staff had regular telephone calls with WDNR to discuss WDNR's progress on addressing several outstanding petition response Orders, including WDNR's progress in addressing the issues raised in the public comments on the draft revised Columbia permit.

17. Since issuance of the Order, EPA Region 5 permitting staff have been assisting WDNR in its effort to revise the Title V permit to resolve the Administrator's objection. In addition to the numerous and regular meetings, emails and telephone conferences with

---

[1] A synthetic minor construction permit is one that includes terms that limit a source's potential to emit to levels below the New Source Review thresholds.

WDNR described above, the assistance at times has included coordination or consultation with EPA's Office of General Counsel and the Office of Air Quality Planning and Standards.  The air permitting staff and I also continue to keep abreast of the progress of the concurrent EPA enforcement action on the same issue.  This year, Region 5 enforcement staff have had settlement discussions with representatives of Columbia 15 times.

18. WDNR has been consistently and continuously working to address the Order, including issuing two draft Title V permits on which it has received comments and is developing responses to comments on the most recent permit.  Further, EPA has been actively assisting WDNR in its efforts to resolve the Administrator's objection.  In light of the above, and in consideration of the progress that EPA enforcement has made in working towards a settlement of the enforcement action against Columbia, EPA Region 5 permitting, to date, has not taken action itself to terminate, modify, or revoke and reissue the permit for Columbia.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____          _11/22/11_
Cheryl L. Newton                                    Date
Director